IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

GOOD CLEAN LOVE, INC.,

        Plaintiff,

        v.

AUDACIOUS BEAUTY, LLC,

        Defendant.

Case No. 6:24-cv-00444-MC

OPINION AND ORDER

**MCSHANE, Judge**:

    Plaintiff Good Clean Love, Inc. brings this action against Defendant Audacious Beauty, LLC, for trademark infringement in violation of federal and Oregon law. Compl. ¶ 1, ECF No. 1. Defendant moves to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) for insufficient service of process and 12(b)(6) for failure to state a claim upon which relief can be granted. Def.'s Mot. 1, ECF No. 11. For the reasons discussed below, Defendant's Motion to Dismiss (ECF No. 11) is DENIED.

## BACKGROUND

    Founded in 2003, Plaintiff sells female sexual health and hygiene products. Compl. ¶ 8. In December 2009, Plaintiff filed the GOOD CLEAN LOVE® wordmark in the United States Patent and Trademark Office. *Id.* ¶ 11. The application, covering the mark's use in connection with "essential oils; oil-based gels for massage, and body butters" in International Class 3 and "oil-based gels for use as personal lubricants, personal lubricants" in International Class 5, was

allowed in September 2011. *Id.* Plaintiff's wordmark, used as early as 2010, remains active and valid and has acquired incontestable status.[1] *Id.*

In December 2021, Defendant filed to register, on an intent-to-use basis, the GOOD CLEAN FUNGI mark for "Non-medicated skin care preparations, namely, creams, lotions, gels, toners, cleaners and peels; Non-medicated preparations all for the care of skin, hair and scalp" in International Class 3. *Id.* ¶ 20. In December 2022, concerned that Defendant's designation was confusingly similar to its own, Plaintiff initiated an Opposition against Defendant's application with the Trademark Trial Appeal Board. *Id.* ¶ 24. In October 2023, despite Plaintiff's pending Opposition, Defendant began using its contested designation in commerce. *Id.* ¶ 26.

Plaintiff filed this action in March 2024, alleging one count of Federal Trademark Infringement under the Lanham Act and one count of Common Law Unfair Competition under Oregon law. *Id.* at 1. In its Complaint, Plaintiff points out that GOOD CLEAN LOVE and GOOD CLEAN FUNGI both "begin with two identical, dominant terms" and each contain "three relatively short and simple words." *Id.* ¶ 21. Plaintiff elaborates by characterizing the marks as "similar with respect to sound, appearance, [and] meaning" while they "create the same overall commercial impression." *Id.* ¶ 37. After characterizing Defendant's "personal hygienic and dermatological goods" as "highly similar to the female sexual health and hygiene goods" it offers, Plaintiff explains that both parties "sell their respective products on Amazon.com[] and utilize digital media and marketing to advertise to consumers seek[ing] clean skincare products." *Id.* ¶ 22–23. Plaintiff asserts that sharing similar customers in the same channels of trade as the Defendant further enhances the likelihood of consumer confusion. *Id.*

---

[1] Incontestable status relates to the validity of a registered trademark; i.e., Plaintiff's Registration No. 4032215 for the mark at issue. 5 *McCarthy on Trademarks and Unfair Competition* § 32:145 (5th ed. Sept. 2024).

Once month after filing the Complaint, Plaintiff attempted to serve Defendant. On April 8 and again on April 17, 2024, Plaintiff's process server attempted service at the Defendant's only address of record registered with the New York Secretary of State.[2] Ferrari Decl. ¶ 4, ECF No. 15. Defendant's "address was a residence in a New York City apartment building and not a place of business;" Plaintiff's counsel concluded that Defendant ran an online operation without a regular place of business.[3] *Id.* ¶ 5. Due to challenges serving Defendant at this location, Plaintiff counsel inspected Defendant's website. *Id.* ¶ 7–9. Under a section titled "It's a Family Affair," Plaintiff's counsel found a side-by-side photo of Mike and Emma Indursky with the description: "Launched in 2020 by 30-year beauty leader Mike Indursky and his daughter, operations guru Emma, HEAR ME RAW is the product of their mutual desire to make a true difference in the beauty business.". *Id.* ¶ 9, ex. 3. Based on Defendant's website representations, Plaintiff counsel "concluded that Ms. Indursky was an officer, managing, or general agent of Defendant, authorized to accept service on behalf of the company." *Id.*

On April 18, Plaintiff's counsel informed Defendant's counsel about the difficulties serving Mr. Indursky and communicated that Plaintiff "would have to move on to serve Emma Indursky in the event that service on Mr. Indursky could not be made." *Id.* ¶ 10. At no point did defense counsel inform Plaintiff's counsel that Ms. Indursky was not authorized to accept service on Defendant's behalf. *Id.* ¶ 10. On May 22, 2024, Plaintiff's counsel sent Defendant's counsel a waiver of service package with a copy of the complaint and other required documents. *Id.* ¶ 12. Subsequently, on May 30, 2024, after five unsuccessful attempts earlier that month, Plaintiff's "process server successfully delivered a copy of the Summons and Complaint to Ms. Indursky in person" at her Connecticut residence. *Id.* ¶ 11, 13. The next day, the process server mailed a copy

---

[2] Defendant is a LLC registered in New York. Compl. ¶ 2
[3] Defendant's registered address is the residence of Mike Indursky, a member of the LLC. Ferrari Decl. ¶ 5

of the summons and complaint to Defendant's registered address in New York. *Id.* ¶ 13. The process server signed an affidavit indicating that Ms. Indursky responded affirmatively to a question asking whether she was authorized to accept service on the Defendant's behalf.[4] *Id.* ¶ 13, ex. 5. Also on May 31, 2024, a process server posted a copy of the complaint and summons at Defendant's registered address in New York and, on June 1, 2024, mailed a copy of the documents to the Defendant at the same address. *Id.* ¶ 14.

## STANDARDS

### I. Insufficient Service of Process

Unless a defendant is served properly under Federal Rule of Civil Procedure 4, the district court lacks personal jurisdiction over the defendant. *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). In the Ninth Circuit, Rule 4 is "applied in a manner that will best effectuate [its] purpose of giving the defendant adequate notice." *Id.* "Rule 4 a flexible rule that should be liberally construed so long as a party receives sufficient notice of the complaint." *United Food & Com. Workers Union, v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir. 1984). "Once service is challenged, plaintiffs bear the burden of establishing that service was valid under Rule 4." *Brockmeyer v. May*, 383 F.3d 798, 801 (9th Cir. 2004). In the event a court determines service is insufficient, the court retains "broad" discretion to either dismiss an action without prejudice or direct the plaintiff to effect proper

---

[4] On this issue, the affidavit appears to contain what could be viewed as essentially boilerplate language. *Id.* at ex. 5 ("The undersigned asked the recipient if he/she is authorized to accept service on behalf of **Audacious Beauty, LLC**, and the recipient responded in the affirmative."). In contrast, Ms. Indursky submitted a declaration stating she "did not tell the process server that gave me the documents that I was authorized to accept service on behalf of Audacious Beauty, LLC." Indursky Decl. ¶ 8; ECF No. 13. The Court need not resolve this factual dispute at this time. For the purpose of resolving the pending motions, the Court assumes, without deciding, that Ms. Indursky did not indicate that she was authorized to accept service on behalf of the Defendant. The Court also accepts as true Ms. Indursky's declaration stating that although she is a paid employee of Defendant, she is not a member, registered agent, manager, nor general agent of Defendant. *Id.* ¶¶ 1–6.

service within a specified period. FED. R. CIV. P. 4(m); *In re Sheehan*, 253 F.3d 507, 513 (9th Cir. 2001).

## II. Failure to State a Claim

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

When considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

## I. Insufficient Service of Process

Under federal law, service of process upon a limited liability company can be made in one of two ways. FED. R. CIV. P. 4(h). First, pursuant to rule 4(h)(1)(A), and cross-referenced with rule 4(e)(1), service upon a limited liability company may be made by "following [the] state law [for serving an individual] . . . in the state where the district court is located . . . ." Second, service may be made "by delivering a copy of the summons and of the complaint to an officer, a

managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." FED. R. CIV. P. 4(h)(1)(B). Here, Defendant contends that Plaintiff's method of service was insufficient on both bases. Defendant first argues that service of process was insufficient because Plaintiff served Ms. Indursky, an employee without the authority to accept process, and neglected to certify the first-class mail copy with a proper return receipt. Def.'s Mot. 1. As discussed below, however, even assuming, without deciding, that Ms. Indursky was not authorized to receive process for the Defendant,[5] Plaintiff's method of service was proper under rule 4(h)(1)(A) and applicable Oregon law.

To determine adequacy of service under Oregon Rule of Civil Procedure ("ORCP") 7, the Oregon Supreme Court provides a two-part test. *Baker v. Foy*, 310 Or. 221, 228–29 (1990). First, service is presumed adequate if performed in the manner specified by ORCP 7 D(2) and authorized under the relevant ORCP 7 D(3) rule for serving a particular defendant. Baker, 310 Or. at 228–29. However, if either requirement is not met or the defendant rebuts the presumption, the court moves to the second step of the *Baker* test; i.e., was the manner of service otherwise adequate under ORCP 7 D(1)'s "reasonable notice" standard.[6] *Id.* at 229. In relevant part, ORCP 7 D(1) specifies that "[s]ummons shall be served . . . in any manner *reasonably calculated*, under all the circumstances, to apprise the defendant of the existence and pendency of the action and to afford a reasonable opportunity to appear and defend." (Emphasis added).

---

[5] There is a body of federal case law holding that service of process is proper when made "upon a representative so integrated within an organization that [they] will know what to do with [it]. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on [their] part to receive service." *Direct Mail,* 840 F.2d at 688 (quoting *Top Form Mills, Inc. v. Sociedad Nationale Industria Applicazioni Viscosa*, 428 F.Supp. 1237, 1251 (S.D.N.Y.1977).

[6] "The phrase 'reasonable notice' is a shorthand description of the requirement of adequate service set forth in ORCP 7 D(1) and . . . is not a free-standing concept." *Baker*, 310 Or. at 234 n.5.

ORCP 7 D(3)(c) specifies the permissible methods for serving a limited liability company. As relevant here, a plaintiff may serve a limited liability company via personal service of a registered agent, manager, or member. ORCP 7 D(3)(c)(i). As discussed above, however, the Court assumes, without deciding, that Ms. Indursky is not a member, manager, or registered agent of Defendant. Therefore, this Court moves to the second *Baker* prong; i.e., whether the manner of service chosen here meets ORCP 7 D(1)'s reasonable notice standard. In making that determination, this Court weighs the totality of the circumstances as they were known to the Plaintiff at the time of service. *River v. Boespflug*, 312 Or. App. 558, 565 (2021) (citing *Baker*, 310 Or. at 225 n.6); *Hoeck v. Schwabe, Williamson & Wyatt*, 149 Or. App. 607, 617 (1997).

Oregon case law is instructive. In *Duber*, service upon a defendant's wife at the wife's residence satisfied the reasonable notice standard despite the fact that the defendant (1) no longer lived there and (2) had recently separated from his wife. *Duber v. Zeitler*, 118 Or. App. 597, 601 (1993). The court relied on the defendant's "regular, frequent, and *predictable* contacts with his wife's residence" to pick up mail and visit his children; the process server also knew that the defendant would be visiting his wife's home shortly and had not yet established a permanent address. *Id*. These circumstances supported the court's conclusion that "it was reasonable for the process server to serve the defendant at his wife's address." *Id*. In other words, although the plaintiff failed to effectuate substituted service under ORCP 7D(2)(b)—by delivering a copy of the summons and complaint with "any person over 14 years of age residing in the dwelling house or usual place of abode of the person to be served"—service was nonetheless "reasonably calculated to give defendant notice of the lawsuit" and therefore adequate under ORCP 7D(1)'s "reasonable notice" standard. *Id*.

The *Duber* court distinguished the facts there from those in *Baker*, where service did not meet the reasonable notice standard despite that defendant's actual notice of the lawsuit. *Id.* In *Baker*, the process server attempted to serve the seventeen-year-old defendant by serving the defendant's mother at the mother's address. 310 Or. at 223. At that time, although the defendant continued to receive mail at his mother's address, he had not lived with his mother for nearly three years. *Id.* The court held that "[d]efendant's happenstance reading of the complaint that had been left with his mother while he was making a fortuitous visit to her home is not service in 'a manner reasonably calculated' by plaintiff" to give defendant notice of the lawsuit. *Id.* at 230. Because the plaintiff lacked sufficient assurance that the defendant would receive process, plaintiff failed to meet the reasonable notice standard of ORCP 7 D(1) despite the fact that the defendant had actual notice of the pending lawsuit. *Id.* at 230–31.

Subsequent courts have found adequate service of process by implying regular, frequent, and predictable contacts between a defendant and the served party based on the nature of their relationship. In *Matter of Marriage of Boyd*, the court held that service on the defendant's bookkeeper, who defendant employed on a monthly retainer to pay the defendant's bills, receive defendant's mail, balance defendant's checkbook, and care for other miscellaneous personal business affairs, satisfied ORCP 7 D(1)'s reasonable notice requirement. 131 Or. App. 194, 199–200 (1994). The court reasoned that the arrangement between the defendant and his bookkeeper implied regular, frequent, and predictable contact such that service on the bookkeeper was reasonably calculated to alert the defendant to the lawsuit. *Id.* In *Hoeck*, the court extended this principle by asking whether the nature of the relationship between the served party and the defendant implied that "service on the former [would] result in notice of the latter." 149 Or. App. at 621. While the *Hoeck* plaintiff lacked precise knowledge of the "regularity or frequency" of a

shareholding attorney's contact with the defendant law firm's registered agent, the court found that serving the attorney fulfilled the reasonable notice requirement. *Id*. The attorney's role and ownership stake in the company made it "highly unlikely" that he would fail to deliver the process to the defendant. *Id*.

Here, considering the totality of the circumstances known to Plaintiff at the time, Plaintiff's service of process on Ms. Indursky was reasonably calculated to apprise the Defendant of this action. Plaintiff concluded—based in part on Defendant's registered address and the process server's multiple, unsuccessful attempts to serve Mr. Indursky at that address—that Defendant ran an online operation and lacked a regular place of business. Ferrari Decl. ¶ 4–6. Plaintiff's attorney noted that due to hurdles with serving an individual in a residential apartment building, she "investigated other possibilities for service on Defendant." *Id*. ¶ 7. As discussed above, Plaintiff's attorney reviewed Defendant's website and clicked on the "It's a Family Affair" section of the website. *Id*. ¶ 9 As outlined above, that section provides: "Launched in 2020 by 30-year beauty leader Mike Indursky and his daughter, operations guru Emma, HEAR ME RAW is the product of their mutual desire to make a true difference in the beauty business." *Id*. ¶ 9, ex. 3. Plaintiff's attorney notes, "There is a photograph of two people, apparently Mike and Emma Indurski, next to the text. Based on Defendant's representations on its website, I concluded that Ms. Indursky was an officer, managing, or general agent of Defendant, authorized to accept service on behalf of the company." *Id*. ¶ 9. From Plaintiff's vantage, serving one of the two named individuals for an online, family-run business was reasonably calculated to apprise the Defendant of the action. Pl.'s Memo 8. Plaintiff calculated its decision to serve Ms. Indursky in part based on Defendant's characterization of Ms. Indursky as "operations guru Emma," next to the side-by-side photo of her and her father, who each played a large part, according to the

website, in "launch[ing]" the business. Ferrari Decl. ¶ 9. By common understanding, "operations guru" is a title that describes someone intimately familiar with an organization's inner workings whose role is to ensure continuous and efficient business performance. It is "highly unlikely" that the "operations guru" daughter for a two-person, family-run business, would not supply notice of service to the proper authority—her father and business colleague. Much like the bookkeeper in *Boyd* or the shareholding attorney in *Hoeck*, Ms. Indursky's role as an "operations guru" for the Defendant, along with her prominent placement on Defendant's website, implies a relationship for which Plaintiff could expect service on the former would result in notice to the latter.[7] *Hoeck* 149 Or. App. at 621.

Here, Defendant timely filed a Motion to Dismiss. Notice was clearly received. While actual notice alone is insufficient to satisfy ORCP 7 D(1)'s reasonable notice standard, this Court considers the several points of contact made between Plaintiff and Defendant while effecting service. In addition to personally serving Ms. Indursky, this Court also considers the call made between counsel, the waiver of service package Plaintiff provided, and the posted complaint and two follow-up mailings sent to the Defendant's lone registered address. Taken together, these factors demonstrate a Plaintiff who, from their vantage, believed they availed the Defendant of an existing and pending action.[8]

---

[7] Ms. Indursky's declaration she is merely an employee of Defendant, as opposed to a member or agent authorized to accept service on behalf of the company, does not alter this conclusion. As described above, when analyzing whether service was "adequate to provide [Defendant] reasonable notice of the existence and pendency of the action against [it, w]e determine the adequacy of service in that regard by *examining the totality of the circumstances as they were known to plaintiffs at the time of service.*" *Hoeck*, 149 Or. App. at 617 (emphasis added) (citing *Baker*, 310 Or. at 225 n.6); *River*, 312 Or. App. at 565.

[8] To be clear, even absent these facts, Plaintiff's personal service on Ms. Indursky would qualify, based on the representations on Defendant's website, as reasonably calculated to give Defendant notice of this action. That said, the additional facts confirm that Plaintiff took all reasonable steps to ensure Defendant knew of the pendency of this lawsuit and could appear to defend itself.

Finally, Defendant disputes the sufficiency of Plaintiff's mailings. Under Oregon state law, unrestricted delivery of service by mail, while inadequate itself, contributes to the totality of circumstances a court may consider. *Hoeck*, 149 Or. App. at 622 (citing *Gallogly v. Calhoon*, 126 Or. App. 366, 370–71 (1994)). Accordingly, the two separate first-class mailings sent to the Defendant support the Plaintiff's reasonable belief that their efforts alerted the Defendant of an existing and pending action. Ferrari Decl. ¶ 13–14.

Because "the manner of service employed by plaintiff satisfy[ies] the "reasonable notice" standard of adequate service set forth in ORCP 7 D(1)," Defendant's 12(b)(5) Motion to Dismiss is DENIED. *Baker*, 310 Or. at 229.

## II. Failure to State a Claim

A successful claim of trademark infringement under the Landham Act, 15 U.S.C. § 1114, must show: (1) a protectable ownership interest in a mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion. *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting *Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.,* 448 F.3d 1118, 1124 (9th Cir. 2006)). Here, Defendant acknowledges Plaintiff's ownership of a valid mark but contests the sufficiency of Plaintiff's allegations as to the likelihood of causing confusion. Def.'s Memo 2, ECF No. 12.

When considering a motion to dismiss, the court must accept a complaint's well-pleaded material facts as true and construe those facts in the light most favorable to the plaintiff. *Burget*, 200 F.3d 663. "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly* 550 U.S. at 555). Determining the likelihood of confusion is "a mixed question . . . predominantly factual in nature." *Levi Strauss & Co. v.*

*Blue Bell, Inc.*, 778 F.2d 1352, 1355 (9th Cir. 1985). "[G]enerally, dismissal for failure to state a claim upon which relief can be granted is appropriate in only the most *extreme* trademark infringement cases, such as where goods are unrelated as a matter of law." *Bliss Collection, LLC v. Latham Companies, LLC*, 82 F.4th 499, 508 (6th Cir. 2023) (quoting *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009)). At this stage of litigation, Plaintiff has satisfied its obligation to "plausibly allege" sufficient facts to show a "likelihood of confusion." Defendant's motion necessarily fails.

The Complaint alleges that Plaintiff's and Defendant's marks are "similar with respect to sound, appearance, meaning, and create the same overall commercial impression." Pl.'s Compl. ¶ 37. The Complaint further states that both marks "begin with two identical, dominant terms" and each label contains "three relatively short and simple words." *Id.* ¶ 21. After characterizing the "personal hygienic and dermatological goods" that Defendant offers as "highly similar" to those it offers—i.e., "skin care preparations"— Plaintiff explains that both companies "sell their respective products on Amazon.com[] and utilize digital media and marketing to advertise to consumers seek[ing] skincare products." *Id.* ¶ 22–23. Plaintiff alleges that the parties' same channels of trade and the marketing of similar goods with similar marks will likely lead to consumer confusion "and would otherwise cause injury and damage to [Plaintiff's marks], as well as its good will and reputation." *Id.* ¶ 39–40.

Defendant, citing *Cloud 9 Comics LLC*, suggests that where the potential for confusion is not apparent, the *Sleekcraft* factors[9] should be applied. Def.'s Memo 10; *Cloud 9 Comics LLC v. Cloud 9 Comics & More LLC*, No. 3:21-CV-00173-YY, 2021 WL 6066666, *1 (D. Or. Oct. 6,

---

[9] *Sleekcraft* factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979).

2021), report and recommendation adopted, No. 3:21-CV-173-YY, 2021 WL 5530943 (D. Or. Nov. 24, 2021). Accepting the material facts of the Complaint as true, this Court does not find the contested marks so unrelated and confusion so unlikely to justify granting the Defendant's motion as a matter of law at this early stage. *Murray v. Cable Nat. Broad. Co.*, 86 F.3d 858, 860 (9th Cir. 1996), as amended (Aug. 6, 1996); *Toho Co. v. Sears, Roebuck & Co.*, 645 F.2d 788, 790-91 (9th Cir. 1981). Additionally, in the Ninth Circuit, a plaintiff need not present evidence of actual confusion in its complaint to survive a motion to dismiss. *See Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446 (9th Cir. 1991) (citing *American Int'l Group, Inc., v. American Int'l Bank,* 926 F.2d 829, 832 (9th Cir. 1991)). Consequently, this Court concludes Defendant's argument that the Complaint lacks evidence of actual confusion meritless. At this stage of litigation, this Court does not have a repository of facts nor the benefit of "extensively briefed" motions for summary judgment, supported by a plethora of expert reports regarding the likelihood (or not) of confusion, as did the *Morgan Creek Prods.* court referenced in the Defendant's supporting memorandum. Def.'s Mot. 10; *Morgan Creek Prods. v. Capital Cities/ABC, Inc.*, No. CV-89-5463-RSWL, 1991 U.S. Dist. LEXIS 20564, at *1 (C.D. Cal. Oct. 25, 1991). Instead, in front of it, this Court has a complaint with "plausibly alleged" pleadings that are specific and, taken as true, indicate a likeliness of consumer confusion.

## CONCLUSION

For the above reasons, the Defendant's Motion to Dismiss is DENIED.

IT IS SO ORDERED.

DATED this 17th day of October, 2024.

_____s/Michael J. McShane_____
Michael J. McShane
United States District Judge